# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| ORTHOCINCY ORTHOPAEDICS & SPORTS MEDICINE, P.S.C.<br>560 South Loop Road<br>Edgewood, Kentucky 41017<br><br>  Plaintiff,<br><br>v.<br><br>EPISODE SOLUTIONS, LLC<br>102 Woodmont Blvd., Suite 350<br>Nashville, Tennessee 37205-2216<br><br>**Also Serve Registered Agent:**<br><br>Corporation Service Company<br>2908 Poston Avenue<br>Nashville, Tennessee 37203-1312<br><br>And<br><br>THOMAS A. GALLAGHER<br>215 Lynnwood Blvd.<br>Nashville, Tennessee 37205-2905<br><br>And<br><br>KYLE S. COOKSEY<br>1421 Primrose Ln.<br>Franklin, Tennessee 37064-9333<br><br>  Defendants. | Civil Action No. 2:25-cv-25-DCR |

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff OrthoCincy Orthopaedics & Sports Medicine, P.S.C. ("Plaintiff" or "OrthoCincy"), by and through counsel, for its Complaint and Demand for Trial by Jury against Defendant Episode Solutions, LLC ("Defendant Episode" or "Episode"), its founder and former Chief Executive Officer Thomas A. Gallagher ("Defendant

{05486329-2 }

Gallagher"), and its current Chief Executive Officer Kyle S. Cooksey ("Defendant Cooksey") (collectively "Defendants"), upon facts known to the Plaintiff and upon information and belief alleges and states as follows:

## PARTIES

1. Plaintiff is a Kentucky professional services corporation with its principal place of business located in Edgewood, Kentucky.

2. Defendant Episode is a Tennessee limited liability company with its principal place of business in Nashville, Tennessee.

3. Defendant Gallagher is the founder and former Chief Executive Officer of Episode Solutions, LLC.

4. Defendant Cooksey is the current Chief Executive Officer of Episode Solutions, LLC.

## JURISDICTION AND VENUE

5. This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as complete diversity exists between the parties to this action and the amount in controversy exceeds $75,000.00, exclusive of interests and costs.

6. The citizenship of a corporation for purposes of diversity jurisdiction is the state of its incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c). Plaintiff is incorporated in the Commonwealth of Kentucky.

7. The citizenship of a limited liability company for purposes of diversity jurisdiction is the citizenship of its members. *V&M Star, LP v. Centimark Corp.,* 596 F.3d 354, 356 (6th Cir. 2010). Upon information and belief, none of Defendant Episode's members is a citizen of Kentucky.

8. Upon information and belief, Defendant Gallagher is a citizen of the state of Tennessee.

9. Upon information and belief, Defendant Cooksey is a citizen of the state of Tennessee.

10. As set forth below, the amount in controversy in this matter is at least $110,000.00, which exceeds the $75,000.00 threshold.

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

12. This Court has specific personal jurisdiction over Defendants because the causes of action alleged herein arise out of Defendants' contacts with Kentucky; in part, the agreement entered into between the parties, the misrepresentations from Defendants and their employees directed into Kentucky, and Defendants' causing injury in Kentucky. It is reasonable and fair and comports with due process and the Constitution to require Defendants to answer for their actions directed into Kentucky and causing injury in Kentucky. By engaging in such acts, Defendants were reasonably noticed that they might be forced to defend themselves in courts located in the Commonwealth of Kentucky.

## FACTUAL BACKGROUND

13. Plaintiff is an independent orthopedic practice which offers orthopedic care to patients in the states of Ohio, Indiana and Kentucky.

14. Defendant Episode is a patient care coordinator that specializes in providing fee and billing services to medical providers.

15. Defendant Gallagher was the founder and Chief Executive Officer of Episode Solutions until approximately November 18, 2024.

16. Defendant Cooksey was announced as the Chief Executive Officer of Episode Solutions, LLC on approximately November 18, 2024.

### BPCI Advanced Initiative Under CMS

17. As part of its business, Defendant Episode operates as a physician group non-convener under the Bundled Payments for Care Improvement Advanced Model ("BPCI Advanced Model"); a payment model provided by the Center for Medicare and Medicaid Services ("CMS").

18. Traditionally, Medicare would make individual payments to the health care providers for each unique service or test furnished to the beneficiaries, even though they all related to the same episode of care (i.e., a knee replacement). The BPCI, and now the BPCI Advanced Model, changed this dynamic by allowing the payments for each service to be bundled and then Medicare would make one single retrospective payment for all services rendered relating to the same episode of care.

19. Under this BPCI Advanced Model, physician group non-conveners like Defendant Episode, were permitted to contract with health care providers for billing and fee-arrangement services. Defendant Episode would bill the governmental entities directly for the services that OrthoCincy provided to its patients. Defendant Episode would then collect the payments from CMS and distribute to OrthoCincy pursuant to the terms of their contractual arrangement.

20. OrthoCincy and Defendant Episode executed a Master Practice Participating Provider Agreement (BPCI Advanced) ("Agreement," attached as Exhibit 1), by which OrthoCincy allowed Defendant Episode to bill and obtain reimbursement from CMS for OrthoCincy's professional services as part of the BPCI Advanced Model program. The rights were reassigned for the sole purpose of facilitating Defendant Episode's ability

to bill and obtain reimbursement from health care payers for the services OrthoCincy provided to patients.

21. Pursuant to the terms of the Agreement, OrthoCincy would receive all amounts it would have received if the services were bundled, and then an additional 40% of what Episode was able to obtain for the services after they were unbundled. Although Defendant Episode facilitated billing and payment, the reimbursement money belonged to OrthoCincy, and Defendant Episode was permitted to hold back a certain amount for its services. At no point in time did the parties ever contemplate or consider that the money reimbursed by health-care payers for OrthoCincy's services would be put into Defendant Episode's general accounting fund, used to fund business or personal obligations, or be paid out to officers including Defendants Gallagher and Cooksey.

**Defendant Episode Delays Payments and Avoids Communication**

22. Beginning in 2024, Defendant Episode had not made the requisite payments to OrthoCincy for certain outstanding claims. Specifically, OrthoCincy identified delinquent payments for services performed in the years 2022, 2023, and 2024.

23. OrthoCincy tried to work with Defendant Episode to resolve the unpaid claims, but Defendant Episode kept delaying any substantive response.

24. Concerned with the lack of cooperation, on July 16, 2024, OrthoCincy CEO JoAnn Reis sent an email to Jason McCormick, an employee of Defendant Episode, notifying Defendant Episode that there were over fifty-four (54) claims totaling $373,233.00 still outstanding. Ms. Reis demanded payment within 10 days. A true and accurate copy of the July 16, 2024 email, excluding the attachment, is attached as Exhibit 2 to this Complaint.

25. Hearing no substantive response, counsel for OrthoCincy, Kelly Holden, sent Defendant Episode a letter reiterating the demand from Ms. Reis' email and informing Defendant Episode that it was violating the terms of the Agreement. A true and accurate copy of the July 19, 2024 letter is attached as Exhibit 3 to this Complaint.

26. Despite this letter and multiple attempts to reconcile the payments via phone calls and emails, Defendant Episode continued its dilatory tactics and refused to remit its contractually obligated payments to OrthoCincy.

27. When pressed for answers, Defendant Episode employees would indicate that they were still reconciling their books and just needed more time. A true and accurate copy of the email chain, excluding attachments, is attached as Exhibit 4 to this Complaint.

28. Weeks would pass without any response to continued communications from OrthoCincy employees.

29. On November 20, 2024, counsel for OrthoCincy sent a letter to Defendant Cooksey[1] and Defendant Episode's General Counsel informing them that Defendant Episode was in violation of the Agreement, and that there was $86,515.06 in outstanding claims dating back to 2022. Ms. Holden also detailed the many attempts that OrthoCincy had made to resolve the issue, only to be told that Defendant Episode was still trying to reconcile the payments. A true and accurate copy of the November 20, 2024 letter is attached as Exhibit 5 to this Complaint.

30. Despite this demand, OrthoCincy did not receive full payment from Defendant Episode. Defendant Episode employees would simply ask for more time.

---

[1] While the letter identifies Trevor Sava as the President and CEO, and Defendant Cooksey as the General Counsel, this was simply typographical error. Upon information and belief, Mr. Sava was the General Counsel, and Mr. Cooksey was the President and CEO.

31. OrthoCincy tried submitting some of the outstanding claims themselves to healthcare payers and ***was denied because the claims had already been paid to Defendant Episode.***

32. By late 2024 and into early 2025, OrthoCincy was forced to resort to asking outside counsel to contact Defendant Episode's outside counsel. Defendant Episode—through counsel—never responded to even a request for a phone call.

33. Eventually, OrthoCincy was forced to initiate this lawsuit.

## COUNT I - BREACH OF CONTRACT
### (Against Defendant Episode)

34. Plaintiff restates and repleads each and every allegation contained in the Complaint, and each of those paragraphs are incorporated in Count I as if wholly set forth herein.

35. OrthoCincy and Defendant Episode entered into a valid and binding contract.

36. Pursuant to the terms of that Agreement, Defendant Episode was required to pay OrthoCincy within 15 days of receipt of funds from Medicare. Defendant Episode has failed to remit all payments to OrthoCincy per the terms of the Agreement.

37. OrthoCincy performed all its contractual obligations and is entitled to all payments from Defendant Episode pursuant to the terms of the executed Agreement.

38. Despite multiple demands, Defendant Episode has refused to remit payment to OrthoCincy for all past due claims.

39. As of the filing of this lawsuit, there are over $110,000.00 worth of claims outstanding and due to OrthoCincy.

40. As a result of Defendant Episode's failure to comply with the terms of the Agreement, OrthoCincy has been damaged.

## COUNT II – CONVERSION
### (Against Defendant Episode)

41. Plaintiff restates and repleads each and every allegation contained in the Complaint, and each of those paragraphs are incorporated in Count II as if wholly set forth herein.

42. OrthoCincy has earned the payments due from Defendant Episode totaling more than $110,000.00.

43. OrthoCincy has rights in, owns, and is entitled to possess the payments totaling more than $110,000.00.

44. OrthoCincy has made multiple demands for distribution of the past due payments from Defendant Episode to no avail.

45. Defendant Episode has asserted, and continues to assert, dominion and control over the payments owed to OrthoCincy in defiance of and in substantial interference with OrthoCincy's rights.

46. Defendant Episode's tortious acts directly and proximately damaged OrthoCincy in an amount to be determined at trial, but in no event less than the $110,000.00 due to OrthoCincy.

## COUNT III – UNJUST ENRICHMENT
### (Against Defendant Episode)

47. Plaintiff restates and repleads each and every allegation contained in the Complaint, and each of those paragraphs are incorporated in Count III as if wholly set forth herein.

48. Episode has unlawfully and inequitably retained money belonging to OrthoCincy.

49. Defendant Episode knows that these funds do not belong to Defendant Episode, but to OrthoCincy, and that Defendant Episode has received a direct benefit at OrthoCincy's expense.

50. It would not be equitable for Defendant Episode to keep these funds when Defendant Episode knows that the money belongs to OrthoCincy.

51. Defendant Episode's unjust conduct was and is the proximate cause in causing losses to OrthoCincy.

52. Defendant Episode has therefore been unjustly enriched by retaining funds rightfully due to OrthoCincy, in an amount to be determined at trial, but in no event less than the $110,000.00 owed to OrthoCincy. It would be inequitable to allow Defendant Episode to retain the benefits of OrthoCincy's work without paying OrthoCincy what is due.

**COUNT IV – BAILMENT**
**(Against Defendant Episode)**

53. Plaintiff restates and repleads each and every contained in that Complaint, and each of those paragraphs are incorporated in Count IV as if wholly set forth herein.

54. Pursuant to the terms of the Agreement, and as part of the BPCI Advanced Model program, CMS was to deliver funds to Defendant Episode, to be held by Defendant Episode in trust for the benefit of OrthoCincy, and to be remitted to OrthoCincy.

55. Upon information and belief, CMS has delivered the funds to Defendant Episode.

56. Defendant Episode has control over the funds which are rightfully the property of OrthoCincy.

57. Despite multiple demands, and despite OrthoCincy performing all its contractual obligations, Defendant has refused to remit the funds due to OrthoCincy.

58. As a result, OrthoCincy has been damaged in an amount to be determined at trial, but in no event less than the $110,000.00 due to OrthoCincy.

## COUNT V – FRAUD
### (Against all Defendants)

59. Plaintiff restates and repleads each and every allegation contained in the Complaint, and each of those paragraphs are incorporated in Count V as if wholly set forth herein.

60. From the outset, Defendant Episode has misstated its intentions regarding the money that Defendant Episode and OrthoCincy were supposed to split (hereinafter called the "Improvement") and concealed relevant information from OrthoCincy.

61. The Improvement has always belonged to OrthoCincy as reimbursement for the services it provides patients. In exchange for obtaining the Improvement, Defendant Episode was permitted to keep 60% of the Improvement.

62. Defendants misrepresented in negotiating the contract and at each communication attached to the Complaint that OrthoCincy's reimbursement money was set aside and belonged without question to OrthoCincy, minus Defendant Episode's percentage for the Improvement.

63. Defendants' misrepresentation was false: upon information and belief OrthoCincy's money was distributed into funds that paid out to Defendants in salary, bonuses, and expenses. In other words, despite the Improvement (money paid by health

care payers for services OrthoCincy provided to their insureds) being a set sum of money that should have been directed immediately to OrthoCincy and not co-mingled with Defendants' own funds, upon information and belief that is exactly what Defendants did.

64. Defendants did not disclose that they would comingle the Improvement for their own personal and business expenses.

65. If OrthoCincy had known that Defendants would be engaging in such comingling, OrthoCincy would not have engaged Defendant Episode, or would have engaged Defendant Episode under much different terms.

66. OrthoCincy has made repeated demands for the past due payments, including the Improvement sum, to Defendant Episode, Defendant Cooksey, and Defendant Episode employees since at least July 16, 2024.

67. Defendant Episode, through its employees, has continually stated that it needed more time to reconcile its accounts but that it would make the requisite payments to OrthoCincy.

68. It has since become obvious that Defendant Episode did not have the funds available to repay OrthoCincy the amounts owed to OrthoCincy pursuant to the terms of the Agreement. And that, upon information and belief, the Defendants comingled the funds specifically designated for repayment to OrthoCincy with other funds and spent those funds on expenses unrelated to OrthoCincy. The Defendants concealed from OrthoCincy the fact that they did not have the funds required to repay OrthoCincy. Instead, the Defendants delayed and made excuses for why the payments had not been made. Defendant Episode's statements that they needed to reconcile the accounts and that they would pay OrthoCincy the amounts due were false.

69. Defendant Gallagher, as CEO of Episode Solutions, was vested with authority over all of Defendant Episode's contracts and finances. Defendant Gallagher was the CEO of Defendant Episode at the time the Agreement was executed, and, upon information and belief, was part of the fraud from its inception, perpetrating and maintaining the fraud until he left his office in November 2024.

70. Defendant Gallagher never disclosed to OrthoCincy that the OrthoCincy funds were comingled with other monies; and Defendant Gallagher never disclosed to OrthoCincy that there were insufficient funds to pay OrthoCincy.

71. Defendant Cooksey, upon information and belief, continued the perpetration of the fraud when he was appointed as CEO of Defendant Episode in November 2024, and maintained the fraud to the present day.

72. Defendant Cooksey never disclosed to OrthoCincy that the OrthoCincy funds were comingled with other monies; and Defendant Cooksey never disclosed to OrthoCincy that there were insufficient funds to pay OrthoCincy.

73. Defendant Episode, and its employees including its former CEO Defendant Gallagher and current CEO Defendant Cooksey, made these representations knowing they were false, or made these representations recklessly.

74. Defendants made these statements to induce OrthoCincy to refrain from acting, in reliance on the misrepresentation, and to prevent OrthoCincy from pursuing their legal rights under the Agreement to recoup the amounts owed.

75. OrthoCincy justifiably relied on the misrepresentations from the Defendants and did not pursue taking legal action.

76. In doing so, OrthoCincy has been harmed as OrthoCincy still has not received the payments due pursuant to the terms of the Agreement.

77. As a result of the Defendants' fraud, OrthoCincy has sustained damages in an amount to be determined at trial, but in no event less than the $100,000.00 owed in past due payments.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff OrthoCincy Orthopaedics & Sports Medicine P.S.C. requests judgment against Defendant Episode Solutions, LLC, Defendant Thomas A. Gallagher, and Defendant Kyle S. Cooksey, including the following relief:

1. An award of all Damages caused by Defendants' unlawful actions in an amount to be proven at trial, but no less than the total amount due under the terms of the Agreement, including prejudgment and post-judgment interest; and

2. An award of punitive damages; and

3. An award of OrthoCincy's costs and reasonable attorneys' fees, expenses, and court costs; and

4. Any such other legal, equitable, and further relief as the Court deems just and proper.

Respectfully submitted,

/s/ *Michael A. Galasso*
Michael A. Galasso (88895)
Zachary C. Schaengold*
Robbins, Kelly, Patterson & Tucker, LPA
312 Elm Street, Suite 2200
Cincinnati, Ohio 45202
T: (513) 721-3330 | F: (513) 721-5001
mgalasso@rkpt.com
zschaengold@rkpt.com
**Attorneys for Plaintiff**
**OrthoCincy Orthopaedics & Sports**
**Medicine, P.S.C.**

* *pro hac vice forthcoming*